UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
AKRON DIVISION

| | |
|---|---|
| Christopher Fultz, | ) |
| Plaintiff, | ) CIVIL COMPLAINT |
| v. | ) Case No. TBD |
| Premier Resolution LLC and Plaza Services LLC, | ) |
| | ) **JURY DEMAND** |
| Defendants. | ) |

## COMPLAINT

Now comes Christopher Fultz ("Plaintiff"), complaining as to Premier Resolution LLC ("Premier") and Plaza Services LLC ("Plaza") (collectively, "Defendants").

### NATURE OF THE ACTION

1. Plaintiff brings this action under the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692 *et seq.*; the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*; the Ohio Consumer Sales Practices Act ("CSPA"), R.C. 1345.09 *et seq.*; and the common law of Ohio.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as the actions or omissions giving rise to the claim occurred in this District.

### PARTIES

4. Plaintiff is a natural person residing in Summit County, Ohio.

[ 1 ]

5. Plaintiff is a Chapter 13 bankruptcy debtor. As a Chapter 13 debtor (as opposed to a Chapter 7 debtor), Plaintiff remains in control of his property, including all of his causes of action, and has the right to sue in his own name.

6. Before filing this suit, Plaintiff, through counsel, informed the Bankruptcy Trustee of his intention to bring this suit and did not receive any timely objection.

7. Premier Resolutions LLC is, upon information and belief, a Georgia limited liability company with its principal place of business in or around Georgia.

8. Upon reference, Premier has an address of 4151 Memorial Dr., Suite 207b, Decatur, GA 30032.

9. Premier is a third-party debt collector whose primary purpose is the collection of defaulted consumer debts.

10. Plaza is a limited liability company with its principal place of business in Atlanta, Georgia.

11. Plaza is a third-party debt collector. Plaza Services LLC (last visited April 19, 2023), https://plazaservicesllc.com (indicating it is a "debt collector").

12. Plaza Services LLC is also a purchaser of defaulted consumer debts.

13. Plaza Services LLC has, as its primary business purpose, the collection of defaulted consumer accounts.

## BACKGROUND

14. Years ago, Plaintiff allegedly incurred a payday loan debt from MoneyLion, with an account number ending in -5582.

[ 2 ]

15. Plaintiff used the loan to pay for household items for personal (not business) use, such as groceries and household bills.

16. After Plaintiff defaulted on this debt, Plaza purchased the debt.

17. Subsequently, Plaza contracted with Premier Resolutions to collect the purported debt from Plaintiff on its behalf.

18. According to Defendant Plaza Services' website, Plaza Services partners with collection agencies (like Premier) to manage accounts as third-party service providers.

19. Plaza Services also collects payments from consumers directly by an online payment portal, by phone, and by mail.

20. Upon information, the contract between Plaza and Premier establishes a joint venture with respect to Plaintiff's account (and a tranche of other similar accounts), with the parties participating in the same revenue stream and each party taking a share of the profits.

21. Under this arrangement, Plaza purchases and holds the accounts; manages the collection of payments from the consumers; and remits regular payments to Premier based on profit received from the venture's collection activity. Premier, in turn, is responsible for placing the phone calls to consumers and intimidating them into paying Plaza.

22. Upon information and belief, Plaza retained the right to control Premier's collection activities, including (but not limited to) by doing the following:

    a.    Reserving the right to "recall" debts placed with Premier Resolution at any time, especially in the event that Premier fails to comply with federal or state laws;

    b.    Requiring Premier Resolution to maintain a compliance management system ("CMS") that meets Plaza reasonable expectations;

    c.    Requiring Premier Resolution to maintain recordings of its telephone calls with consumers; and

    d.    Requiring Premier Resolution to notify Plaza of consumer complaints and lawsuits.

23.    Although Plaza had the right to control Premier Resolution's actions through the joint venture, it failed to prevent Premier from taking the actions described in this Complaint.

24.    In fact, Plaza almost exclusively partners with third-party debt collectors that it knows regularly violate the FDCPA.

25.    On reference, Premier is known to regularly violate the FDCPA.

26.    Plaza Services LLC is aware that its partnerships with fly-by-night third-party agencies inevitably result in FDCPA violations. Plaza regularly receives notice through lawsuits, and it has received nearly a hundred Consumer Financial Protection Bureau ("CFPB") complaints.

27. Any reasonable person would, upon doing the most basic due diligence, realize that Premier is not FDCPA compliant and that any consumers whose accounts are referred to Premier will, as a moral certainty, experience FDCPA violations.

28. On information and belief, Plaza prefers to hire debt collectors that it knows commit these types of FDCPA violations because this increases its return on investment.

29. Plaza previously employed an agency known as "Green Square" to collect the subject debt, and Plaintiff filed suit for FDCPA violations against that entity; Plaza them withdrew the debt from "Green Square," but now commits similar violations through its joint venture with Premier.

30. In about February 2023, Premier began to collect upon the account on behalf of the joint venture between Defendants.

31. At the time, Defendants were aware that their collection efforts were subject to a mandatory stay.

32. Defendant Plaza had already made a claim relating to the account in Plaintiff's ongoing bankruptcy, and Defendants knew or should have known that Plaintiff was represented by counsel with respect to the underlying debt.

33. On or about February 24, 2023, Premier left Plaintiff the following voicemail message:

> "This message is for Chris Fultz in order to be transferred to a live agent press one otherwise we have been retained by the plane of the process and facilitate a civil complaint was named you actually responded we do have to perform an _____ verification but that is only a preparation is needed for you to be served in the meantime you can exercise your right by you or your legal representation contacting our mediations department if you fail to comply this will result in the forfeiture of your right to _____

[ 5 ]

this matter and it will be 40 out _____you can reach our legal office at 470-682-4350…"

34. On or about February 28, 2023, Premier left Plaintiff the following voicemail message:

"This message is intended for Chris Fultz in order to be transferred to a live agent press one otherwise we have retained by the plaintive to process and facilitate a civil complaint which means you at the respondent we do have to perform an asset and employment verification but that is only of preparation is need for you to be served in the meantime you can exercise your right by you or your legal representation contacting our mediation department… Matter we do need to speak with you or your legal counsel by the close of business today to get a statement you can reach our office at 470-682-4350…"

35. In response to the voicemails, Plaintiff spoke over the phone with "Andrea" in the "Mediations Department," who informed him that he owed $1,277.14 on the Moneylion account, and that Defendants would seek a "judgment" against him if he failed to pay.

36. On or about March 1, 2023, Premier left Plaintiff another voicemail message:

"Good afternoon this message to [inaudible] my name is Andrea _____ with the mediation department from Premier Resolutions as of this time you are forfeiting your right to resolve this matter on \_\_\_\_\_ no response with results in a forfeiture _____ moving forward against you please contact \_\_\_ mediation, today before 4 PM eastern standard time on the number 470866240 one for \_\_\_\_\_ I just _____ 358182 thank you…"

37. On or about March 31, 2023, Premier left Plaintiff another voicemail message:

"This message is for Christopher _____ in order to be transferred to a live agent press one otherwise we have been retained by the plan of the process and facilitate a civil complaint which \_\_\_\_\_ actually responded we do have to perform an \_\_\_\_ employment verification but that is only a preparation

[ 6 ]

is needed for you to start in the meantime you can exercise your right by you or your legal department if you fail to comply this will result in the forfeiture of your right to dispute this matter and it will be forwarded out to your jurisdiction you can reach our legal office at 470-682-4350…"

38. On April 11, Premier left the following Premier the following message on April 11:

"This message is intended for [robotic voice] Christopher Fultz. In order to be transferred to a live agent, Press 1. Otherwise, we have been retained by the Plaintiff to process and facilitate a civil Complaint which names you as the respondent. We do have to perform an asset and employment verification, but that is only if preparation is needed for you to be served. In the meantime, you can exercise your rights by you or your legal representation contacting our mediations department. We have made several attempts to reach out regarding this matter. We do need to speak with you or your legal counsel by the close of business today to get a statement. You can reach our office at [robotic voice] 470-682-4350.

39. Premier placed its calls using pre-recorded words and phrases.

40. Premier Recovery violated Plaintiff's rights under the FDCPA; caused him stress and anxiety, including but not limited to familial stress; invaded his privacy; interfered with his use and enjoyment of his cellular telephone; caused his worry and confusion; and caused his to fear events that would not happen and that Premier had no true intention or ability to bring about.

### COUNT I — VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

41. Plaintiff realleges the paragraphs above as though fully set forth herein.

42. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) of the FDCPA.

43. Premier Resolution is a "debt collector" as defined by § 1692a(6) of the FDCPA because the principal purposes of its business is the collection of debts, and because it uses the instrumentalities of interstate commerce to do so.

[ 7 ]

44. In the alternative, Premier Resolution is a "debt collector[s]" under § 1692(a)(6) because it regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

45. Plaza is a "debt collector" as defined by § 1692a(6) of the FDCPA because the principal purpose of its business is the collection of debts, and because it uses the instrumentalities of interstate commerce to do so. Specifically, Plaintiff states that the sole purpose of Plaza is to purchase portfolios of defaulted consumer debts and to collect those debts.

46. Premier Resolution violated 15 U.S.C. § 1692 in the following ways:

   a. Repeatedly communicating with a debtor that Premier and Plaza knew to be represented by counsel (including bankruptcy counsel) with respect to the debt, in violation of § 1692c(a)(2);

   b. Repeatedly communicating with a debtor that Premier and Plaza knew had filed for bankruptcy and was subject to a Court-ordered stay instigated by the consumer, in violation of § 1692c(c);

   c. Repeatedly calling Plaintiff's cellular telephone to leave him threatening and harassing messages, in violation of 1692d(5);

   d. Falsely representing the legal status of the debt in violation of § 1692e(2)(A), as the debt was subject to bankruptcy and not amenable to suit;

   e. Falsely implying that communications were from attorneys in violation of § 1692e(3);

   f. Falsely implying that nonpayment of the debt would result in seizure,

[ 8 ]

      garnishment, or attachment of "assets" or "wages" when no such lawful action could be taken, in violation of § 1692e(4);

  g. Falsely threatening to sue, when such action could not legally be taken, in violation of § 1692e(5);

  h. Using the above false threats and deceptive means to collect upon a debt, in violation of § 1692e(10);

  i. Failing to provide the disclosures required by § 1692e(11), the so-called "mini-Miranda" provision of the FDCPA;

  j. With respect to Premier, using a name that has not been properly registered with the Georgia Secretary of State or the Ohio Secretary of State, and which upon information and reference is not its true business name;

  k. Contacting Plaintiff despite the ongoing bankruptcy stay, which because it is unfair and unconscionable, constitutes a violation of 15 U.S.C. 1692(f);

  l. Overshadowing Plaintiff's rights and failing to provide Plaintiff notice of his rights, in violation of 1692g.

47. Premier Resolution is directly and/or vicariously liable for the actions of its employees.

48. Plaza is liable under the FDCPA because it is a debt collector, and is therefore responsible for Premier Resolution's actions taken on its behalf to collect its debts. *See Barbato v. Greystone All., LLC*, 916 F.3d 260, 261 (3d Cir. 2019) ("[A]n entity that otherwise meets the 'principal purpose' definition cannot avoid the dictates of the FDCPA merely by hiring a third party to do its collecting.").

49. Further, Plaza is vicariously liable for Premier Resolution's actions under traditional agency principles, as Plaza is in a partnership, joint venture, or principal-agent relationship with and Premier, and the latter's actions were taken within the scope of the agency relationship.

## COUNT II — VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

50. The TCPA prohibits, under 47 U.S.C. § 227(b)(A), the use of an artificial or prerecorded voice to place calls to cell phones without the express prior consent of the called party.

51. Defendants' calls were placed using artificial and prerecorded voices, and Plaintiff never consented to this.

52. As a result, Plaintiff is entitled to $500 per violation, trebled for willful or knowing violations.

## COUNT III — VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT

53. Plaintiff realleges all paragraphs above as fully set forth therein.

54. Plaintiff realleges the paragraphs above as though fully set forth herein.

55. The CSPA, pursuant to R.C. 1345.02(A), states that "[n]o supplier shall commit an unfair or deceptive practice in connection with a consumer transaction."

56. Plaintiff is a "person" as defined by R.C. 1345.01(B).

57. Upon information and belief, Defendant is a "supplier" as defined by R.C. 1345.01(C). *Taylor v. First Resolution Invest. Corp.*, 72 N.E.3d 573, 600 (Ohio 2016), *cert. denied sub nom. First Resolution Inv. Corp. v. Taylor-Jarvis*, 137 S. Ct. 398 (2016).

58. Debt collection is a "consumer transaction" as defined by R.C. 1345.01(A).

59. R.C. §1345.09(B) thus grants Plaintiff a private right of action against Defendant for $200 per violation of the CSPA, plus noneconomic damages of up to $5,000 per violation in an amount to be determined at trial, plus attorney fees.

60. Defendant has committed unfair or deceptive acts or practices in violation of the CSPA, R.C. 1345.02(A), by engaging in acts and practices in violation of the FDCPA as set forth above.

61. Such acts and practices have been previously determined by Ohio courts to violate the CSPA, R.C. 1345.01 *et seq.* *See, e.g., Kelly v. Montgomery Lynch & Assocs., Inc.*, No. 1:07-CV-919, 2008 WL 1775251, at *11 (N.D. Ohio Apr. 15, 2008) ("[A]ny violation of any one of the enumerated sections of the FDCPA is necessarily an unfair and deceptive act or practice in violation of R.C. § 1345.02 and/or § 1345.03").

62. Additionally, Defendant's violations of the TCPA constitute deceptive and unfair acts under the CSPA.

63. Defendant committed such actions after such decisions were available for public inspection pursuant to R.C. 1345.05(A)(3) and is liable.

## COUNT VI – INVASION OF PRIVACY

64. Plaintiff realleges the above paragraphs though fully set forth herein.

65. Defendants' conduct intruded upon Plaintiff's seclusion by causing his phone to ring repeatedly; causing him to be constantly badgered about a debt upon which he had already declared bankruptcy; and intruding upon his private life.

66. Such acts are outrageous and uncivilized, and they rise to the level of being tortious under the common law of Ohio.

WHEREFORE, Plaintiff respectfully requests judgment as follows:

 **a.** Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. § 1692k(a)(2)(A);

 **b.** Awarding Plaintiff actual or nominal damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1692k(a)(1);

 **c.** Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1692k(a)(3);

 **d.** Awarding Plaintiff statutory damages under the TCPA, plus treble damages if warranted by law;

 **e.** Awarding Plaintiff statutory damages, actual damages, treble damages, and punitive damages under the CSPA, together with attorney fees and an attorney fee multiplier;

 **f.** Awarding Plaintiff actual, nominal, and punitive damages under Ohio's common law;

 **g.** Awarding Plaintiff the costs of this action and any other appropriate relief.

**A TRIAL BY JURY IS DEMANDED.**

Dated: April 19, 2023

By: s/ Jonathan Hilton

Jonathan Hilton (0095742)
HILTON PARKER LLC
7544 Slate Ridge Blvd.
Reynoldsburg, OH 43068
Tel: (614) 992-2277
Fax: (614) 927-5980
jhilton@hiltonparker.com
*Attorney for Plaintiff*

[ 13 ]